**Ryszard SZUMLICZ, Plaintiff-Appellee,**

v.

**NORWEGIAN AMERICA LINE, INC., etc., Global Cruises, Ltd., etc., Defendants-Appellants.**

No. 81–6045.

United States Court of Appeals, Eleventh Circuit.

Feb. 28, 1983.

Frank J. Marston, Miami, Fla., for defendants-appellants.

Elizabeth K. Clarke, Miami, Fla., for plaintiff-appellee.

Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

Defendant Norwegian America Line, Inc., appeals from a judgment, entered on a jury verdict, awarding $35,000.00 damages to plaintiff Ryszard Szumlicz, in a suit brought by him for unseaworthiness and under the Jones Act, 46 U.S.C. § 688.[1] Defendant urges error in the refusal of the district court to refrain from exercising jurisdiction under the doctrine of forum non conveniens and error in setting aside the jury's finding of contributory negligence, resulting in the full assessment of compensatory damages awarded to the plaintiff.[2] We affirm.

1. Defendant Global Cruises, Ltd., was the agent for defendant Norwegian-America Line, Inc. The jury found no negligence on the part of Global, so Norwegian-America Line, Inc., is the sole appellant.

2. The defendant does not attack the jury findings that plaintiff's injury resulted from the unseaworthiness of the vessel and the negligence of the defendant.

Plaintiff, a citizen and resident of Poland, entered the service of the VISTAFJORD in Hamburg, Germany on December 16, 1978, to work for a period of six months as a musician. The ship proceeded from Hamburg to another port in Germany where passengers boarded, and thence to England where additional passengers came aboard. The vessel then sailed to the Canary Islands, and from there to South Florida where she arrived on January 19, 1979. Between that date and February 17, 1979, when the plaintiff was hospitalized, the VISTAFJORD called at Port Everglades, Florida every two weeks. During a four-month period the vessel called at that port nine times. The ship flies the Norwegian flag and is owned by Norwegian companies whose offices are in Norway. It is substantially financed by American concerns.

The defendant maintains offices in Fort Lauderdale, Florida, and in New York, New York. The VISTAFJORD and other Norwegian America Line vessels operate on a regular basis out of Port Everglades, in Fort Lauderdale. Defendant advertises and operates two, three and four week Caribbean cruises, commencing and terminating in Fort Lauderdale. Special rates are offered to passengers flying in from various points in the Continental United States. The VISTAFJORD and other cruise ships of Norwegian America Line have their Caribbean cruise routes based in Florida with scheduled stops in other United States ports such as San Juan, Puerto Rico, and St. Thomas and St. Croix in the Virgin Islands. Defendant has shipping agents in Fort Lauderdale, and has a physician there who regularly treats defendants' seamen.

Plaintiff saw the ship's doctor on February 9 or 10, 1979 for chest pains. He saw the doctor again on February 14 and 15. Without advising the plaintiff the nature of his illness, the doctor permitted him to continue working through February 15. Finally, on February 16, the doctor told plaintiff to discontinue working, again without disclosing his diagnosis. When the ship put into Fort Lauderdale on February 17, the port doctor hospitalized him. Plaintiff ultimately returned to Europe. He was paid the monetary benefits provided for in the Norwegian Seaman's Act.

Defendant, in its amended answer, asserted that the court should decline to exercise jurisdiction of the action under the doctrine of forum non conveniens and later filed a motion for summary judgment. The court deferred ruling on the motion and the case proceeded to trial. The jury returned a verdict for the plaintiff for $35,000.00, but found the defendant ten percent at fault and the plaintiff ninety percent at fault, resulting in a net award of $3,500. Subsequently, the court denied defendant's motion for summary judgment and struck the portion of the verdict finding the plaintiff ninety percent at fault, and entered judgment in favor of the plaintiff for $35,000.00.

In striking the portion of the verdict finding contributory negligence the court concluded that it was error to instruct the jury to consider this issue in the absence of any evidence that the plaintiff was himself negligent. We agree. In sum, the defendant argues that the plaintiff should have self-diagnosed his heart attack and should have stopped working even though the ship's doctor did not disclose plaintiff's illness or instruct him not to work. Defendant argues that plaintiff could have quit his job. These contentions do not merit discussion. The record discloses a total absence of evidence of contributory negligence.

Rather than concern ourselves with plaintiff's argument that there was a procedural basis for the court to have denied defendant's motion for summary judgment, we address the real issue—the choice of law problem—which is presented here where the plaintiff, a foreign seaman, seeks to recover personal injury damages from the defendant, a foreign shipowner.

After noting that the criteria listed in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), as supplemented by *Hellenic Lines v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) did not neatly fit this case, the district court concluded "that sufficient contacts were adduced to justify retaining jurisdiction over

this cause and to make the application of American Law appropriate under the circumstances of this case. This conclusion is based upon a finding that the defendants conducted substantial business in United States ports and that plaintiff was treated for his medical condition in the United States while serving aboard defendant's vessel and in their employment."

Whether the Jones Act applies in this case involves a question of choice of law, the determination of which requires a two-pronged inquiry. First, the court must decide, under choice of law principles, whether the law of the United States should be applied. If United States law applies, the case should not be dismissed for forum non conveniens. If the court determines that United States law does not apply, it then examines the traditional considerations of forum non conveniens to determine whether the court should exercise its discretion and decline to assert jurisdiction over the case. *Volyrakis v. M/V ISA-BELLE,* 668 F.2d 863 (5th Cir.1982); *Chiazor v. Transworld Drilling Co., Ltd.,* 648 F.2d 1015 (5th Cir.1981).

As we pointed out in *Fisher v. Agios Nicolaos V,* 628 F.2d 308, 316 (5th Cir.1980), the factors for determining the choice of law question

> have been set out by the United States Supreme Court in the *Lauritzen—Romero—Rhoditis* trilogy: *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); *Romero v. International Terminal Operating Company,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). *Lauritzen* set out seven connecting factors generally regarded as significant, to be listed below, and in the case before it held that the overwhelming preponderance of these factors favored application of the foreign law, thus rejecting the application of the American Jones Act sought by plaintiffs. *Romero* held that the *Lauritzen* factors applied to the determination of whether 'the maritime law of the United States' may be applied, 358

U.S. at 381, 79 S.Ct. at 485, as well as to whether the Jones Act might be applied. *Rhoditis,* the latest of these decisions, expanded on the *Lauritzen* test by stating that its list of seven factors 'was not intended as exhaustive' and that the test was 'not a mechanical one.' 398 U.S. at 308–09, 90 S.Ct. at 1734. In holding the Jones Act to be applicable, the court noted that to effectuate the liberal purposes of the Jones Act the 'real nature of the operation' and 'the actual operational contacts that this ship and this owner have with the United States' must be considered 398 U.S. at 310, 90 S.Ct. at 1734–35. The *Rhoditis* gloss on the *Lauritzen* tests indicate that the appropriate application of United States law to the foreign seaman's suit depended on the substantiality of the contacts with the United States of the foreign defendant involved in the transaction. *Lauritzen* noted seven factors as significant for consideration: (1) Place of wrongful act; (2) Law of the flag; (3) Allegiance or domicile of the injured; (4) Allegiance of defendant shipowner; (5) Place of contract; (6) Inaccessibility of foreign forum; and (7) Law of the forum. *Rhoditis* noted an eighth factor of importance, the shipowner's 'place of operations' indicating that otherwise an alien owner with substantial business operations in this country might, by escaping his obligations as a Jones Act 'employer', be unfairly advantaged over citizens of this country engaged in the same business. 398 U.S. at 309, 90 S.Ct. 1734 (footnote omitted).

Having considered the factors for determining the choice of law question the district court found that the law of the United States applied and thus correctly did not reach the second prong of the inquiry, for "if United States law *is* applicable, the American court should retain jurisdiction rather than relegate the controversy to a foreign tribunal", *Fisher, supra* at 315.

The defendant complains however that the "contacts" in this case are substantially less than those in other cases in which the courts have not permitted an alien sea-

man to maintain his action in the United States against an alien shipowner. For instance, in applying the *Lauritzen* criteria to this case, defendant points out that (1) the place of the wrongful act occurred aboard the vessel while it was on a voyage between San Juan, Puerto Rico and Fort Lauderdale, Florida, where plaintiff went ashore and was hospitalized; (2) the law of the flag was Norwegian; (3) plaintiff was domiciled in Poland; (4) the shipowner was Norwegian; (5) the place of contract was Norway and Germany; (6) a forum was accessible in Norway; (7) the law of the forum was Norway.[3] But this argument omits the *Rhoditis* gloss on *Lauritzen* factors—the "substantial use of a United States base of operations for the shipping and revenues of the vessel and its owner, together with the other United States contacts", which justified the choice of the Jones Act and of general maritime law as administered by our courts as a more appropriate basis for decision than the Norwegian compensation law. *Fisher, supra,* at 317.

The defendant also relies on *Volyrakis, supra* and *Nunez-Lozano v. Rederi,* 634 F.2d 135 (5th Cir.1980). The factual underpinning of these cases distinguishes them from this case. In *Volyrakis* the court said that the *Lauritzen* factors strongly favored the application of Greek law and "that the injury occurred in United States waters is the *sole* factor in favor of applying United States law. This fact is not enough." (Emphasis supplied). *Id.* at 867. The court further found that the vessel had no substantial base of operations in this country. In *Nunez,* a Norwegian flag ship, with its base of operations in Norway, was docked in a Siberian port when the plaintiff, a Honduran, was injured. Except for the plaintiff being signed on the vessel in the United States there were no other contacts in this country. The court found that "[t]he majority of important contacts in this

case are elsewhere and do not justify an assumption of jurisdiction." *Id.* at 137.

While the underlying principles of the forum non conveniens doctrine are well established, each case must be decided on its peculiar factual setting. The district court's determination that the defendant shipowner had a substantial base of operations in the United States is a factual finding that should not be disturbed on review unless clearly erroneous. So tested we find no reversible error. Absent a clear abuse of discretion we cannot overturn the district court's denial of a motion to dismiss on forum non conveniens. We find no such abuse.

*Affirmed.*

---

3. The contract of employment noted that "rights and duties under this contract of service shall be governed by Norwegian Seaman's Regulations . . ." It further provided that certain insurance coverage for illness and accidents would be paid in accordance with the Norwegian Seaman's Act of 1975 (Exhibit 5). Neither of these documents was received in evidence, and no other attempt was made by the defendant to prove the law of Norway as it might be relevant to this case.