Julio Ignacio Lourido LEON, Gina Mercedes Valdivieso Santos, et al., Plaintiffs-Appellants,

v.

MILLON AIR, INC., a Florida corporation, Millon Air Cargo, Inc., a Florida corporation et al., Defendants-Appellees.

No. 00-11938.

United States Court of Appeals,

Eleventh Circuit.

May 21, 2001.

Appeal from the United States District Court for the Southern District of Florida. (No. 98-07128-CV-LCN), Lenore C. Nesbitt, Judge.

Before EDMONDSON, FAY and NEWMAN[*], Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns application of the doctrine of *forum non conveniens* in the context of a fatal airplane crash. The appeal is from the May 17, 1999, order of the District Court for the Southern District Florida (Lenore C. Nesbitt, District Judge) dismissing on the ground of *forum non conveniens* a suit by Julio Ignacio Lourido Leon and numerous other plaintiffs, all of whom are citizens of Ecuador. The suit was brought against Millon Air, Inc. ("Millon Air"), an air cargo carrier and other defendants whom the plaintiffs claim are responsible for the October 22, 1996, crash of a cargo-carrying aircraft owned and operated by Millon Air. The plane, which had no passengers, crashed shortly after take-off from Manta, Ecuador. In addition to killing the three members of the crew (who are not plaintiffs) the crash killed 30 residents of Ecuador living in the neighborhood of the crash site, and injured many others. The appeal is also from the District Court's March 29, 2000, order denying the Plaintiffs' motions for new trial under Fed.R.Civ.P. 59 and 60. We conclude that the District Judge did not exceed her discretion in dismissing the suit, but that the dismissal should have been appropriately conditioned. We therefore modify the order of dismissal, affirm the order as modified, and affirm the denial of the motion for new trial.

Procedural History

More than 700 people allegedly injured by the crash have filed approximately 100 lawsuits in state and federal courts in the United States. In 1997, thirty-six of the cases in the Southern District of Florida were consolidated before Judge Nesbitt under Case No. 96-3165, which is referred to in the pending litigation

[*]Honorable Jon O. Newman, U.S. Circuit Judge for the Second Circuit, sitting by designation.

as *Cedeno v. Millon Air* (although its caption is *Joza, et al v. Millon Air* ). On January 12, 1998, Judge Nesbitt dismissed the consolidated *Cedeno* cases on the ground of *forum non conveniens*. The Court retained jurisdiction "over the enforcement of the concessions made by the Defendants and approved by this Court." *Cedeno* Op. at 12. These were (1) concession of "primary liability for damage caused" by the crash, (2) acceptance of service and jurisdiction of the Ecuadorian courts, (3) waiver of statute of limitations defenses, and (4) satisfaction of any final judgments entered by the Ecuadorian courts. *Id.* The *Cedeno* plaintiffs timely appealed.

On January 27, 1998, the Congress of Ecuador enacted "Law No. 55," which provides:

Without affecting its literal meaning, articles 27, 28, 29 and 30 of the Civil Procedure Law, are hereby interpreted so that, in case of international concurrent jurisdiction, the plaintiff can freely choose to demand [*i.e.,* to file a complaint], in Ecuador or in another country, with the sole exception of cases which—pursuant to an explicit provision of law, must be resolved by Ecuadorian Judges, like the divorce of an Ecuadorian citizen.... In the case that the demand is filed outside of Ecuador, the national competence and the jurisdiction of the Ecuadorian Judges on the case will be terminated forever.

In December 1997, just prior to the enactment of Law No. 55, a Broward County state court dismissed a consolidated action brought against Millon Air by 106 Ecuadorans allegedly injured by the crash. Some of these plaintiffs subsequently filed suit in an Ecuadorian court of first instance, which in April 1998 dismissed the case because of Law No. 55.

This development prompted the *Cedeno* plaintiffs in September 1998 to ask this Court to stay the *Cedeno* appeal and remand the case to the District Court. Meanwhile, on October 13, 1998, the Superior Court of Justice of Portoviejo (Ecuador) reversed the trial court's decision in the case involving the 106 plaintiffs in the Broward County suit, holding that Law No. 55 did not apply to cases that a United States court had dismissed because of *forum non conveniens*. "It should be supposed that law 55 is in effect when a foreign judge has taken up the cause and is hearing it, but not in a case in which the foreign judge has refused to hear the lawsuit, as has done the Broward County Judge in his decision."

Ultimately, this Court remanded the *Cedeno* litigation to the District Court, without adjudicating the correctness of the *forum non conveniens* dismissal.

On October 15, 1998, the Plaintiffs in the pending case ("Plaintiffs" or "*Leon* Plaintiffs") filed their complaint in the Southern District of Florida. The Defendants and counsel were the same as in the *Cedeno* action. In December 1998, the Defendants filed a motion to dismiss the *Leon* action based on *forum non conveniens*. The motion included affidavits from American and Ecuadorian lawyers, vouching for the

adequacy of the Ecuadorian legal system. In April 1999, the Plaintiffs responded to the Millon Air motion, first by informal letter and then by a formal pleading. In their formal Response, the Plaintiffs argued that the Ecuadorian legal system was so fragile that it was not an effective forum to decide the case. They alleged that the Ecuadorian legal system was in turmoil and had been recently shut down by a strike of the judges. The Plaintiffs said they were "rely[ing] on prior filings" (presumably from the *Cedeno* case). The *Leon* plaintiffs also discussed the possibility (in their informal letter, which was appended as an exhibit to the formal pleading) that Law No. 55 had eliminated the jurisdiction of the Ecuadorian courts.

On May 17, 1999, Judge Nesbitt entered an order dismissing the case on the ground of *forum non conveniens*. Noting the marked similarity between the *Leon* and the *Cedeno* cases, she relied primarily on her reasons for dismissing *Cedeno* (described below), adding only explicit consideration of Law No. 55. On that issue, she acknowledged that Law No. 55 had been enacted since her *Cedeno* decision, but said that the Ecuadorian appellate court had ruled that Law No. 55 did not bar an Ecuadorian court from hearing claims dismissed because of *forum non conveniens*. Judge Nesbitt also noted that Millon Air had given the *Leon* Plaintiffs the same promises given to the *Cedeno* Plaintiffs. She therefore dismissed the case, although she did not explicitly make Millon Air's concessions a condition of her dismissal order, as she had done in *Cedeno*.

The *Leon* Plaintiffs subsequently moved for a new trial, alleging newly discovered evidence that Millon Air had denied liability in one of the Ecuadorian actions, in violation of their *Cedeno* promise to contest only damages. The District Court rejected this motion, on the ground that the Ecuadorian action where Millon Air was contesting liability did not involve a *Cedeno* plaintiff.

The *Cedeno* Decision

In dismissing the pending case, Judge Nesbitt relied primarily on the reasons she had given for dismissing the *Cedeno* case. In *Cedeno,* Judge Nesbitt required Millon Air to show that there was an adequate alternative forum, that the balance of "private interests" and "public interests" weighed in favor of dismissing the litigation to the alternative forum (with the public interests coming into play only where the private interests were at or near "equipoise"), and that there would be no inconvenience or prejudice to plaintiff in filing in the foreign forum. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-62, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

Judge Nesbitt found that Millon Air had made each of the required showings. First, she found that

the Ecuadorian courts were an adequate alternative forum. She acknowledged that there had been a strike by judges and that some judges had been removed from the Supreme Court, but concluded, based on Millon Air affidavits, that the strike was over and that the "instability has been resolved and the Ecuadorian legal system is again functioning normally." *Cedeno* Op. at 4 (unreported). The fact that punitive damages would be unavailable in Ecuador was of no moment because the "potential for a smaller damage award is not a basis for the denial" of a *forum non conveniens* motion; the remedy provided by the Ecuadorian courts would not be " 'so clearly inadequate or unsatisfactory that it is no remedy at all.' " *Id.* at 6 (quoting *Piper,* 454 U.S. at 254, 102 S.Ct. 252).

Second, Judge Nesbitt weighed private interests, *i.e.,* location of proof, availability of compulsory process, and other practical problems. Judge Nesbitt found that the private interests weighed in favor of dismissing the case, primarily because the witnesses as to damages (the only issue in the case, since Millon Air conceded liability) were located in Ecuador, beyond the reach of the District Court's compulsory process, and "presumably" most of them spoke only Spanish. Judge Nesbitt conceded that a plaintiff's choice of forum was accorded deference, particularly where the forum was the defendant's home forum. However, Judge Nesbitt noted that foreign plaintiffs litigating in the United States were entitled to " 'less deference' " in their forum choice. *Id.* at 9 (quoting *Piper,* 454 U.S. at 256, 102 S.Ct. 252). "Accordingly, the Plaintiffs' choice of forum in this case does not deserve any deference other than considering it in the context of the overall convenience of the parties and in that light, Ecuador is still the most convenient forum for the parties to try this case." *Id.*

Next, the District Court considered the public interests, *i.e.,* "administrative difficulties stemming from court congestion, the interest in having local controversies decided in their home forum and the interest in having laws determined by their home tribunal." *Id.* at 9-10. Judge Nesbitt indicated that her inquiry here was academic, since she believed that public interests come into play only when the private interests are at or near equipoise, interests she had already found strongly favored dismissing. Nevertheless, the District Court noted that the public interest factors also favored dismissing. Judge Nesbitt said she was "cognizant of the backlog in Ecuador's court system" but noted that the damages issue was "very simple," and that the *Cedeno* claims could be consolidated in Ecuador with the Broward cases. *Id.* at 10. The Court also noted that Ecuador had an interest in trying cases that bore on Ecuador's air traffic control system, and that Ecuador would be better able to cope with Spanish-speaking witnesses. *Id.* at 10-11.

Finally, the Court noted that it would be possible to reinstate the case in Ecuador, since all defendants had agreed to jurisdiction and service of process. The Court did not in this opinion discuss Law No. 55, since it had not at that time been enacted.

## Discussion

A court of appeals reviews a dismissal based on *forum non conveniens* for abuse of discretion, according the District Court " 'substantial deference.' " *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 951 (11th Cir.1997) (quoting *Piper,* 454 U.S. at 257, 102 S.Ct. 252). Factual determinations are reviewed for clear error. *Szumlicz v. Norwegian America Line, Inc.,* 698 F.2d 1192, 1196 (11th Cir.1983).

Except in one particular, we agree with the District Court's summary of the law of *forum non conveniens.* The moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *See Republic of Panama,* 119 F.3d at 951; *C.A. La Seguridad v. Transytur Line,* 707 F.2d 1304, 1307 (11th Cir.1983). As described more fully below, balancing private interests requires determining the convenience of the parties, affording domestic plaintiffs "a strong presumption" that their forum choice is sufficiently convenient, *id.* (internal quotation marks omitted), and a weaker presumption applying in cases brought by foreign plaintiffs, *Piper,* 454 U.S. at 256, 102 S.Ct. 252. However, in stating that the balance of public interests was superfluous because such factors enter the equation only when the private interest factors are at or near "equipoise," *Cedeno* op. at 3, *see also C.A. La Seguridad,* 707 F.2d at 1307, Judge Nesbitt somewhat overstated the matter. As a leading commentator has noted, even though the private factors are "generally considered more important" than the public factors, the better rule is to consider both factors in all cases, 17 *Moore's Federal Practice* § 111.74[3][b] at 111-221 (3d ed.2000), and this has been our approach in recent cases, *Satz v. McDonnell Douglas Corp.,* 244 F.3d 1279, 1283-84 (11th Cir.2001).

In challenging the District Court's application of these criteria, the Appellants dispute (a) the adequacy of the Ecuadorian forum and (b) the District Court's balancing of the private interests.

A.     Availability and Adequacy of the Ecuadorian Forum

A defendant has the burden of persuasion as to all elements of a *forum non conviens* motion, including the burden of demonstrating that an adequate alternative forum is available. *Republic of Panama,*

119 F.3d at 951. Availability and adequacy warrant separate consideration. *See Satz,* 244 F.3d at 1283-84. An alternative forum is "available" to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred. *See Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. 252 (citation omitted) ("Ordinarily, [the requirement of an alternative forum] will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."). In the pending case, the dispute about whether Law No. 55 precludes Ecuadorian courts from asserting jurisdiction over Plaintiffs' claims is a dispute about availability.

A defendant also bears the burden of proving the "adequacy" of the alternative forum. *See Satz,* 244 F.3d at 1282 (defendant carried burden of proving Argentina was an adequate forum). In *Piper,* the Supreme Court has noted that dismissal may be improper where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." 454 U.S. at 254, 102 S.Ct. 252. Courts have been strict about requiring that defendants demonstrate that the alternative forum offers at least some relief. *See, e.g., Mercier v. Sheraton International, Inc.,* 935 F.2d 419, 425 (1st Cir.1991) (reversing *forum non conveniens* dismissal required where defendant failed to prove "expressly that Turkish law recognizes claims for breach of contract and tortious interference with contract").

However, "[a]n adequate forum need not be a perfect forum," *Satz,* 244 F.3d at 1283, and courts have not always required that defendants do much to refute allegations of partiality and inefficiency in the alternative forum. As Judge Ryskamp has noted, the argument that the alternative forum is too corrupt to be adequate "does not enjoy a particularly impressive track record." *Eastman Kodak Co. v. Kavlin,* 978 F.Supp. 1078, 1084 (S.D.Fla.1997). However, while "[s]ome inconvenience" to litigants does not indicate that a forum is inadequate, *Satz,* 244 F.3d at 1283 (internal quotation marks omitted), courts have said that extreme amounts of partiality or inefficiency may render the alternative forum inadequate. *See, e.g., Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1227-31 (3d Cir.1995) (Indian forum was inadequate where delays of up to 25 years were possible).

The reluctance to hold an alternative forum inadequate on these grounds has manifested itself not only in the degree of corruption or inefficiency that must be shown, but also in the allocation of the burdens of proof. Some courts have said that an alternative forum is presumptively impartial and efficient, and have put at least the burden of production on the plaintiff to show that this is not so. *See, e.g., Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 393-94 (5th Cir.1983) ("the district court may presume that the foreign law is adequate, unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum

otherwise made known to the court, plainly demonstrate that the plaintiffs are highly unlikely to obtain basic justice therein"), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982,* 821 F.2d 1147, 1163 n. 25 (5th Cir.1987); *cf. El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 678 (D.C.Cir.1996) (plaintiff's general allegations of lack of impartiality insufficient to make forum inadequate); *Mercier v. Sheraton International, Inc.,* 981 F.2d 1345, 1351 (1st Cir.1992) ("*Mercier II* ") (rejecting plaintiffs' attack on Turkish courts' ability to treat women fairly, as not substantiated by any evidence). Going further, the Second Circuit has said that "[c]onsiderations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards," *PT United Can Co. v. Crown, Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998), though more recently that court has indicated a willingness to reject judgments of dysfunctional foreign legal systems, *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 141-42 (2d Cir.2000) (declining to enforce judgment by Liberian court).

In *Eastman Kodak,* the District Court for the Southern District of Florida determined that, where the plaintiff had produced evidence of serious partiality in Bolivia, the defendants had failed to meet their burden of persuading the Court that this evidence was incorrect, and that the forum was in fact adequate. 978 F.Supp. at 1087.[1] We think this was the correct approach: defendants have the ultimate burden of persuasion, but only where the plaintiff has substantiated his allegations of serious corruption or delay. Thus, where the allegations are insubstantially supported, as in *Mercier II* and *El-Fadl,* a District Court may reject them without considering any evidence from the defendant. But where the plaintiff produces significant evidence documenting the partiality or delay (in years) typically associated with the adjudication of similar claims, and these conditions are so severe as to call the adequacy of the forum into doubt, then the defendant has the burden to persuade the District Court that the facts are otherwise. *See Eastman Kodak,* 978 F.Supp. at 1087; *cf. Satz,* 244 F.3d at 1283 (defendant's evidence was sufficient to sustain burden of demonstrating adequacy of Argentine forum). This approach forbids dismissal to alternative forums that realistically are not capable of producing a remedy for the plaintiff's injuries,[2] without crediting cursory attacks on legal systems simply

---

[1]In other cases where the alternative forum has been found to be potentially inadequate because of a dysfunctional legal system, the burden of persuasion has not been clearly identified; in practice the plaintiffs have usually come forward with some evidence. *See, e.g., Bhatnagar,* 52 F.3d at 1228.

[2]A survey conducted by Prof. Robertson found that few dismissed cases are actually litigated to a judgment in the alternative forum. David R. Robertson, *Forum Non Conveniens in America and England: "A Rather Fantastic Fiction",*103 L.Q. Rev. 398, 419 (1987). Robertson reported that of the eighty-five dismissals in his study, only three actually resulted in a judgment by a foreign court. *See also Dow Chemical Co. v. Castro Alfaro,* 786 S.W.2d 674, 683 (Tex.1990) (Doggett, J., concurring) ("A

because they are somewhat slower or less elaborate than ours.

Applying the foregoing approach to the pending case, we first consider whether the Ecuadorian courts are available notwithstanding Law No. 55. In her opinion in the pending case, Judge Nesbitt explicitly considered the one factor distinguishing the *forum non conveniens* claim in *Leon* from the prior claim in *Cedeno*—the significance of Law No. 55. Law No. 55 provides that once a lawsuit is filed outside Ecuador, "the national competence and the jurisdiction of the Ecuadorian Judges on the case will be terminated forever." Judge Nesbitt determined that the Plaintiffs' Law No. 55 claim was defeated by the Portoviejo appellate court's ruling that Law No. 55 did not apply to litigation dismissed from a foreign court on the ground of *forum non conveniens*. While the Plaintiffs contend that there remains controversy in Ecuador concerning Law No. 55, we cannot say that Judge Nesbitt's determination as to the current interpretation of Law No. 55 in Ecuador was clearly erroneous. Nor is the alleged uncertainty over Law No. 55 an obstacle to dismissal; the District Court would presumably reassert jurisdiction over the case in the event that jurisdiction in the Ecuadorian courts is declined. *See Gschwind v. Cessna Aircraft Co.,* 161 F.3d 602, 607 (10th Cir.1998) (conditions of dismissal included consent to reinstatement if jurisdiction in France was declined).

The next issue concerns the Plaintiffs' attack on the efficiency and impartiality of the Ecuadorian courts. To meet their burden of production on this issue, the Plaintiffs rely entirely on the arguments and affidavits submitted in the *Cedeno* action. The Plaintiffs' major allegation in *Cedeno* was that the judges of Ecuador were out on strike and the 31 justices of the Supreme Court had been removed by the Congress. However, Judge Nesbitt noted that as of the time of her ruling in *Cedeno,* "[t]he judges have returned to work," "the instability has been resolved[,]" and "the Ecuadorian legal system is again functioning normally." *Cedeno* op. at 4. The Plaintiffs do not contend on this appeal that these findings were clearly erroneous.[3]

_____

*forum non conveniens* dismissal is often, in reality, a complete victory for the defendant.").

[3]We note that since Judge Nesbitt's dismissal of *Cedeno* and the pending case, a district court in the Southern District of New York *sua sponte* has raised the issue of the adequacy of Ecuador's legal system, in considering whether to dismiss a case involving alleged complicity by the Ecuadorian government in massive environmental torts. *See Aguinda v. Texaco, Inc.,* No. 93 Civ. 7527(TSR) (S.D.N.Y. Jan. 31, 2000). The Court was concerned about a military coup that, eleven days prior to the writing of the opinion, had overthrown the democratically elected president; the Court re-opened the record for submissions on the adequacy of the Ecuadorian courts in the confused aftermath of the coup, but has so far not issued a final ruling on the *forum non conveniens* motion. However, the Ecuadorian political situation was much more relevant in that suit than in this case, which implicates no sovereign interests and involves private parties only. Additionally, there is some reason to believe that the Ecuadorian government has stabilized in the past year. *See* Pilar Valero, *Ecuadorian Chief Faces Protests Like Those*

The Plaintiffs' other challenge in the *Cedeno* litigation to the adequacy of the Ecuadorian forum was a claim of specific, chronic shortcomings with the Ecuadorian legal system. In the *Cedeno* record, affidavits from observers of Ecuadorian courts identified these deficiencies: a lack of financial resources, illustrated by the allocation to the courts of less than two percent of the national budget, the use of manual typewriters in 90 percent of the courts, and the absence of computers in the trial courts; congestion and delays, illustrated by case filings of one thousand lawsuits per judge, with disposition of 200-300 cases per judge; and backlogs, illustrated by one commercial case that has been pending for 12 years.

We do not believe this evidence is sufficient to satisfy the Plaintiffs' burden of production. While the logistical and financial problems facing the Ecuadorian courts are undoubtedly substantial, the Plaintiffs have not made a sufficient showing that such problems would preclude the fair and reasonably expeditious adjudication of the simple damages issues presented by the pending case.[4] Significantly, the Ecuadorian courts handling claims by other Manta air crash victims have issued their jurisdictional rulings in short order, and they appear to be taking submissions on the merits in at least one case (that of Ms. Roca, discussed below) where Millon Air is disputing liability. On this record, the District Court did not exceed its discretion in finding Ecuador to be an adequate forum.

B.    Balancing the Private and Public Interests

"Private interests" include, in Justice Jackson's phrasing, "ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses ... and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839. As already noted, there is normally a strong

---

*That Sparked Coup,* EFE News Service, Jan. 22, 2001 (describing peaceful protests on anniversary of coup, without backing from the armed forces).

[4]The two percent allocation of the Ecuadorian national budget to the judiciary is insufficiently probative of an inadequate forum when one considers that in the United States the federal judiciary's budget is only two-tenths of one percent of the national budget. *See* Judith Resnik, *Trial As Error, Jurisdiction As Injury: Transforming the Meaning of Article III,* 113 Harv. L.Rev. 924, 954 (2000). Although there are few computers or electric typewriters in Ecuadorian courts, our courts dispensed justice for nearly two centuries before the advent of electric typewriters and computers. The identification of one long-delayed commercial case is not a persuasive basis to gauge the adequacy of entire court system. *Cf. United States v. Secretary of Housing and Urban Development,* 239 F.3d 211 (2d Cir.2001) (original complaint filed in 1980). The large number of filings is not remarkable either, as some federal judges endure staggering numbers of annual filings, *see* Administrative Office of the United States Courts, *Judicial Business of the United States Courts,* Table X-1A, at 388 (1999) (1,029 weighted filings per judgeship in Southern District of California); *id.* at 387 (900 weighted filings per judgeship in Western District of Texas).

presumption that the plaintiff has chosen a sufficiently convenient forum, and defendants in such cases are required to prove "vexation" and "oppressiveness" that are "out of all proportion" to the plaintiff's convenience. *Piper,* 454 U.S. at 241, 102 S.Ct. 252 (internal quotation marks omitted). However, the presumption that a plaintiff has chosen a sufficiently convenient forum "weakens" when the plaintiff is a foreigner litigating far from home, *C.A. La Seguridad,* 707 F.2d at 1308 n. 7, and in such cases plaintiff's forum choice is accorded "less deference," *Piper,* 454 U.S. at 256, 102 S.Ct. 252.

Yet even according Plaintiffs' forum choice at least the diminished presumption of convenience to which it is entitled, the District Judge did not exceed her discretion in finding the private factors to weigh in favor of dismissal. Judge Nesbitt's finding was premised on the Defendants' having conceded liability for the crash in the *Cedeno* action, which meant that the only triable dispute was whether the deaths or injuries of the Plaintiffs were caused by the crashing airplane or the impact of debris from it,[5] and the extent of damages.[6] As Judge Nesbitt noted, the evidence necessary to litigate these matters was located in Ecuador and was in the Spanish language. While the Plaintiffs have agreed to appear in the District Courts and to assume the cost of deposing witnesses in Ecuador, *cf. Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir.1996) (offer to transport witnesses offset inconvenience of witnesses' foreign location), the Plaintiffs' offer did not extend to guaranteeing the presence in the United States of non-plaintiffs who could verify whether in fact a plaintiff had been injured by the crash, and to the degree alleged. These persons will presumably be among the key defense witnesses.

We also note that the Plaintiffs have not challenged Judge Nesbitt's finding that the public interests strongly favored dismissal. As she observed, the Ecuadorian courts are already hearing Manta crash cases, and Ecuador has an interest in determining the extent of damages payable when planes crash in Ecuador on Ecuadorian citizens. *See Cedeno* op. at 9. Since the Plaintiffs have not met their burden of producing sufficient evidence that Ecuador is an inadequate forum, and since the Defendants have shown that Ecuador is an available forum and that the public and private factors both weigh in favor of dismissal, Judge Nesbitt's

---

[5]The damages determination will necessarily involve an issue of causation, not in the sense of whether negligence caused the crash, but only in the sense of whether the crash caused the Plaintiff's injuries.

[6]The Plaintiffs contend that, despite the Defendants' admission of liability, evidence in Miami will be relevant to the issue of comparative fault. However, the Defendants have made it clear that their admission of liability is absolute, and are not claiming an apportionment for comparative fault. They also point out that comparative fault is not recognized in Ecuador, and, in any event, would be an unlikely defense to claims of people injured on the ground by a crashing airplane.

decision to dismiss was within her discretion (subject to the modification described below).

## C. Denial of a New Trial

The Plaintiffs unsuccessfully sought to challenge the dismissal order by motion for a new trial under Fed.R.Civ.P. 59 and 60(b), on the ground that Millon Air, despite its concession as to liability in *Cedeno,* had disputed its liability to Rosa Amira Delgado Roca in an Ecuador court. The District Court properly denied relief, noting that the concession as to liability applied only to plaintiffs in the *Cedeno* (and *Leon* ) litigation, and that Roca was not among those plaintiffs.

## D. Conditions of the Dismissal

Unlike the dismissal order in *Cedeno,* the dismissal order in the pending case (perhaps inadvertently) did not recite the conditions to which the Defendants had agreed. We therefore modify the dismissal order in this case, *see* 28 U.S.C. § 2106 (authority of appellate court to modify), to include the four conditions recited in the *Cedeno* order. *See Cedeno* Order of January 12, 1998, at 12 (Concessions A-D). In addition, because of the arguable uncertainty concerning the future interpretation of Law No. 55 in Ecuador, we further modify the dismissal order in this case to provide that any case dismissed pursuant to the District Court's order may be reinstated in the event that jurisdiction to entertain such a case is rejected by a final decision of a court in Ecuador. *See Gschwind,* 161 F.3d at 607. We note that conditioning the dismissal does not destroy finality, nor leave the case pending in the District Court. *See Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1515-16 (11th Cir.1985).

## Conclusion

The Order of the District Court dismissing on the ground of *forum non conveniens* is modified as provided in this opinion, and, as modified, is affirmed. The Order denying a new trial is AFFIRMED.[7]

---

[7]We also deny the Appellees' motion for counsel fees, which alleged that the *Leon* Plaintiffs have failed to cite any part of the record in their appellate brief. That motion was referred to this panel. The Plaintiffs have adequately indicated their reliance on the record in the *Cedeno* litigation, on which Judge Nesbitt explicitly relied, and, especially since counsel for both sides were the same in both cases, the Appellees have suffered no prejudice or added expense simply because the *Cedeno* affidavits were not formally made part of the record in the *Leon* litigation.