[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 27, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16732
Non-Argument Calendar
_____

D. C. Docket No. 03-61180-CV-PCH

PABLO MEMBREÑO,

Plaintiff-Appellant,

versus

COSTA CROCIERE S.P.A.,
PRESTIGE CRUISES, N.V.,
COSTA CRUISE LINES, N.V., L.L.C.,
d.b.a. Costa Cruise Lines,
CSCS INTERNATIONAL N.V.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 27, 2005)**

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Pablo Membreño appeals the district court's order dismissing his suit based on the Jones Act and general maritime law for *forum non conveniens*. He also appeals the district court's determination that the law of the United States does not apply to his case.

## I.

Membreño, a Honduran citizen and resident, was employed by Cruise Ships Catering & Service International, N.V. ("CSCS") as an oiler on two ships owned by Costa Crociere, S.p.A ("Costa"). CSCS is a Netherlands Antilles company whose only land-based office is in Curacao, Netherlands Antilles. Costa is an Italian corporation, headquartered in Genoa, Italy. Through an intermediary Italian holding company, Costa is a fully owned subsidiary of Carnival Corporation, a Panamanian corporation with its principal place of business in Miami, Florida. Costa maintains no officers or employees in the United States. Both of the ships on which Membreño worked are Italian-flagged vessels.

Membreño joined the *Costa Atlantica*, the first Costa ship on which he worked, on June 12, 2000 in Helsinki, Finland. On January 23, 2001, the *Costa Atlantica* was engaged in a seven-day Caribbean cruise beginning and ending in

Fort Lauderdale, Florida. On that date, Membreño alleges that his right wrist was injured when a smokestack door closed on it. When the alleged injury occurred, the *Costa Atlantica* was in international waters. Membreño contends that, though he reported his injury to his supervisor and the ship's doctor, he did not receive prompt medical attention. Membreño's employment contract ended five days after the alleged accident. He disembarked the ship and was flown back to Honduras.

In March 2001, Membreño traveled back to Fort Lauderdale and began working on the *Costa Victoria*. The defendants contend that Membreño's wrist injury actually occurred during this voyage. Membreño alleges he complained to the ship's doctor that he had not received any medical care for the wrist injury he had sustained while working on the *Costa Atlantica* and that his wrist was still bothering him. On September 14, 2001, Membreño received medical attention for his wrist in Barcelona, Spain. Two days later, he disembarked the ship in Naples and was flown home to Honduras by CSCS for medical treatment.

In Honduras, Dr. Francisco Murrillo diagnosed Membreño with Kienbock's disease and recommended surgery. Membreño requested a second opinion, and CSCS offered him the opportunity to procure a second opinion from Dr. Jorge Osejo, another Honduran doctor. Instead, Membreño chose to travel to Miami to see Dr. Jay Dennis, an orthopedic surgeon and wrist and elbow specialist. On May

3

14, 2002, Dr. Dennis performed surgery on Membreño's wrist. On October 16, 2002, Membreño returned to Honduras and underwent physical therapy.

On June 18, 2003, Membreño filed a complaint in the district court alleging counts under the Jones Act and under general maritime law relating to his wrist injury. There were originally four defendants to the suit: Costa Crociere, S.p.A. ("Costa"); Cruise Ships Catering & Service International, N.V. ("CSCS"); Prestige Cruises, N.V.; and Costa Cruise Lines, N.V. The parties stipulated to the dismissal of two defendants, Prestige Cruises, N.V. and Costa Cruise Lines, N.V.

On October 20, 2003, the remaining defendants, Costa and CSCS, filed a motion to dismiss based on *forum non conveniens*. The district court determined that the law of the United States did not apply to Membreño's suit, granted the defendants' motion to dismiss based on *forum non conveniens*, and dismissed the case without prejudice on November 23, 2004. Membreño appeals from that dismissal.

## II.

We review choice of law determinations de novo. Sigalas v. Lido Mar., Inc., 776 F.2d 1512, 1516 (11th Cir. 1985). We review a district court's factual determination concerning whether a shipowner has a substantial base of operations in the United States only for clear error. Szumlicz v. Norwegian Am. Line, Inc.,

4

698 F.2d 1192, 1196 (11th Cir. 1983). We may only reverse a district court's dismissal based on *forum non conveniens* if it constitutes a clear abuse of discretion. Sigalas, 776 F.2d at 1519.

**III.**

The first step in determining whether an action should be dismissed for *forum non conveniens* is to determine whether United States law should be applied to the case. See Szumlicz, 698 F.2d at 1195. The Supreme Court has set out eight factors that should be considered in determining whether the Jones Act and the general maritime law of the United States should be applied: (1) the place of the wrongful act; (2) the flag under which the ship sails; (3) the allegiance or domicile of the injured party; (4) the allegiance of the defendant shipowner; (5) the place of the contract between the injured party and the shipowner; (6) the accessibility of a foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations. Id. at 1195 (citing Lauritzen v. Larsen, 345 U.S. 571, 73 S. Ct. 921 (1953) and Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 90 S. Ct. 1731 (1970)).

In this case, six of the eight factors point in favor of the defendants' contention that United States law should not apply. Taking Membreño's version of events to be true, the wrongful act occurred in the Caribbean Sea, outside the territorial waters of the United States. The vessels on which Membreño worked

5

were Italian-flagged ships. Membreño lives in and is a citizen of Honduras. The shipowner, Costa, is an Italian corporation. Membreño entered into a contract to work onboard Costa's ships in Helsinki, Finland. Foreign fora are accessible to Membreño in Italy, Honduras, and the Netherlands Antilles; the defendants have waived any time-bar defenses and have consented to personal jurisdiction in each of these fora. The seventh factor, the law of the forum, "is entitled to little weight because 'fortuitous circumstances . . . often determine the forum." Sigalas, 776 F.2d at 1517 (quoting Lauritzen, 345 U.S. at 591, 73 S. Ct. at 932).

Thus, the only significant question is whether the defendants have a substantial base of operations in the United States warranting the application of United States law. If the defendants have a substantial base of operations in the United States, this factor alone can justify the application of United States law. See Szumlicz, 698 F.2d at 1195–96.

Membreño's argument that Costa has a substantial base of operations in the United States is based primarily on the fact that, through an intermediary Italian holding company, Costa is a fully owned subsidiary of Carnival Corporation. It is undisputed that Carnival maintains its principal place of business in Miami, Florida. We conclude that this fact is insufficient to establish that Costa has a substantial base of operations in the United States.

Corporate distinctions generally may not be disregarded absent fraud, improper conduct, illegality, or bad faith. See Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1320–22 (11th Cir. 1998) (applying Florida law to determine whether the corporate veil should be pierced). Membreño has made no such showing here. The record indicates that Carnival does not exercise day-to-day control over Costa and that corporate formalities are properly maintained. Costa's day-to-day operations are run from a 450-person office in Genoa, Italy. Though Costa contracts with Carnival for the provision of certain goods and services, these contracts are the product of arms-length negotiations between the two companies in which corporate distinctions are properly maintained. Many of these contracts give Costa great discretion in determining whether to procure goods through Carnival or through other vendors. Had Costa not entered into these contracts with Carnival, it would have been necessary for Costa to enter into similar contracts with other entities. And, as the district court noted, these contracts would not be necessary if Carnival actually were in charge of Costa's day-to-day operations.

Though Costa markets some of its cruises in the United States, 80 to 85% of its business comes from the European market. Only a small number of Costa's cruises originate from or call at American ports. During the relevant period,

7

Costa's fleet spent only 3.4% of its sailing days at American ports. Costa maintains a United States subsidiary, Costa Cruise Lines, N.V., that markets and sells passenger tickets in the United States, but that subsidiary is just one of eight separate companies that markets Costa cruises.

There is ample evidence to support the district court's determination that Costa does not maintain a substantial base of operations in the United States. Accordingly, the district court correctly concluded that United States law should not be applied to this case.

## IV.

After concluding that Membreño's claims are governed by foreign law, we proceed with the *forum non conveniens* analysis. See Szumlicz, 698 F.2d at 1195. The party seeking to have a case dismissed based on *forum non conveniens* "must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." Leon v. Million Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001). The first and third elements are clearly satisfied here. Alternative fora are available in Honduras, Italy, and the Netherlands Antilles, and the defendants have waived jurisdictional and time-bar defenses in those fora.

Private-interest factors "include . . . 'ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Id. at 1314 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947)). Though we ordinarily presume "that a plaintiff has chosen a sufficiently convenient forum," that presumption "weakens when the plaintiff is a foreigner litigating far from home." Id. at 1315 (internal marks and citations omitted).

Except for the existence of Membreño's surgeon in South Florida, all the private-interest factors weigh in favor of dismissal. Membreño is not a United States citizen. With the exception of the surgeon, no United States citizen or resident is likely to be a witness. Most of the witnesses, medical records, and documentary evidence are located in Italy, Spain, Monaco, and Honduras. Membreño can obtain an enforceable judgment in another forum. In short, the "practical problems" of litigation favor an alternative forum.

Public-interest factors "include the sovereigns' interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 953 (11th Cir. 1997) (citing Gilbert, 330 U.S. at 508–09, 67 S. Ct. at 843). The

9

need to apply foreign law is a public-interest factor that mitigates strongly in favor of dismissal. <u>Sigalas</u>, 776 F.2d at 1520.

Here, the public-interest factors favor dismissal. No significant relationship exists between the parties or the wrongful act and the United States. Membreño is a foreign plaintiff, and foreign law will apply. Clearly, Honduras and Italy have a much stronger interest in adjudicating disputes involving their citizens, corporations, and vessels.

Because the *forum non conveniens* factors weigh in favor of dismissal, the district court did not abuse its discretion in dismissing the suit.

**AFFIRMED.**