**ZAPATA MARINE SERVICE,**
**Plaintiff-Appellant,**

v.

**O/Y FINNLINES, LTD., and the M/V FINNTRADER, Defendants-Appellees.**

**No. 76–2646.**

United States Court of Appeals,
Fifth Circuit.

March 3, 1978.

Joseph D. Cheavens, Houston, Tex., for plaintiff-appellant.

Gus A. Schill, Jr., E. D. Vickery, Houston, Tex., for defendants-appellees.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

PER CURIAM:

This case presents a question of the interpretation of a forum-selection clause in an agreement negotiated between the owners of two ships after the vessels had been involved in a collision on the high seas. The District Court for the Southern District of Texas dismissed the case relying primarily on *M/S BREMEN v. Zapata Offshore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). For the reasons set out below, we affirm that dismissal.

Zapata argues that this case is controlled by *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955 (5 Cir. 1974), which held that a clause directing that the parties "must submit to the jurisdiction of the court of New York" was not a mandatory forum selection clause. *Keaty,* however, teaches another principle which is equally forceful as a rule of interpretation—that when a contract provision is subject to opposing, yet reasonable interpretation, an interpretation is preferred which operates more strongly against the party from whom the words proceeded. *Id.* at 957.

The district court found as a fact that the parties agreed to suit in Great Britain. That finding is not clearly erroneous. Zapata not only proposed the forum in a strongly-worded telegram following the sea accident, but it thereafter instigated litigation in the London courts. Now Zapata claims that it did not regard that jurisdiction as exclusive nor could FINNTRADER'S owners have so regarded it. We disagree. Whether we view this case from the vantage point of traditional contract analysis or from that of the purpose of forum selection clauses generally, we reach the same result. With respect to contract analysis, even if we were to assume that Zapata meant for its telegram to convey a proposal for non-exclusive jurisdiction, we have no reason to believe that FINNLINES either knew or had reason to know of that meaning. *See* 3 A. Corbin, Contracts § 537 (1960). With regard to the forum selection problem, we note that FINNTRADER'S owners had two choices when they received Zapata's telegram. They could either consent to English jurisdiction or chance that one of their ships would be arrested in other, wholly fortuitous jurisdiction. In either case unless Zapata is held to its own selection of a forum, any choice it held out to FINNLINES is wholly illusory.

We need not decide whether the principles enunciated by the Supreme Court in M/S BREMEN, *supra,* are applicable in all post-accident negotiations. We hold only that on the facts and circumstances of this case neither principles of contract interpretation nor those of any other argument advanced by Zapata prevented the district court's dismissal. We find no error in that court's opinion and order that it be AFFIRMED.