**Aung Lin WAI, Plaintiff,**

v.

**RAINBOW HOLDINGS; M.T.M. Ship Management, Pte., Ltd.; and M.T. Maritime Management (USA) LLC, in personam, Defendants.**

**No. 03–61197–CIV.**

United States District Court, S.D. Florida, Miami Division.

Feb. 23, 2004.

Michael Frederick Guilford, Guilford & Rash, Miami, FL, Craig Thomas Downs, Julio Jesus Ayala, Jr., Fort Lauderdale, FL, for Aung Lin Wai, plaintiff.

William R. Boeringer, Hayden & Milliken, Coral Gables, FL, for Rainbow Holdings, M.T.M. Ship Management Pte. Ltd., M.T. Maritime Management (USA) LLC, In Personam, M/T Chembulk Westport, In Rem, defendants.

## ORDER ON PENDING MOTIONS

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendants, Rainbow Holdings, M.T.M. Ship Management Pte. Ltd., and M.T. Maritime Management (USA) LLC's (collectively "Defendants") Motion to Dismiss Seaman's Complaint for Damages ("Motion to Dismiss") **(D.E.15)**; and Defendants' Motion to Stay Discovery Pending Ruling on Motions to Dismiss ("Motion to Stay Discovery") **(D.E.41)**. The Court has reviewed the Motions, the response and reply memoranda, applicable law, and heard oral argument on the Motion to Dismiss.

### I. *Factual and Procedural Background*

Plaintiff, Aung Lin Wai's ("Wai") action arises out of an accident aboard the vessel, M/T Chembulk Westport, while it was docked at Port Everglades, Florida, on or about May 9, 2003. The M/T Chembulk Westport is a tanker ship registered in Liberia. Defendant, Rainbow Holdings, a Liberian company, is the disponent owner of the M/T Chembulk Westport. Defendant, M.T. Maritime Management (USA) LLC ("Maritime Management"), is a United States corporation that acts, and on May 9, 2003 acted, as the cargo operator for the M/T Chembulk Westport. Wai was employed by Defendant, M.T.M. Ship Management Pte., Ltd. ("Ship Management"), a Singapore company, as an assistant chief officer on the vessel. Wai was a citizen and resident of the Union of Myanmar, which is the former Burma. He joined the M/T Chembulk Westport in China on February 20, 2003.

It is alleged that on May 9, 2003, Wai suffered severe and permanent injuries when a high tension mooring line slipped off its bit and/or snapped under great tension, striking Wai in the face and head. (Complaint, ¶ 10). It is further alleged that Defendants owned, operated, engaged, maintained and/or controlled the M/T Chembulk Westport (Complaint, ¶ 4), and that Defendants were "Wai's employer and/or acted as an agent for an undisclosed principal who was the owner and/or operator of said ship." (Complaint, ¶ 5).

In support of the Motion to Dismiss, Defendants have filed the Declaration of Maung Win Kyaw **(D.E.21)**. The Kyaw Declaration states that Ship Management is a Singapore limited liability company with its principal offices in Singapore, where its daily business is conducted.

(Declaration of Maung Win Kyaw ("Kyaw Decl."), ¶ 1). Ship Management has no offices in Florida or in the United States. (*Id.* ¶ 2). Ship Management is primarily involved in the business of providing a full range of ship management services to various companies, specializing in chemical and parcel tankers and especially tankers engaged in ocean trades in the inter-Far East, Southeast Asia (westbound), and the Arabian Gulf (east and west). (*Id.* ¶ 3). The officers and directors of Ship Management are located in and reside in Singapore, as do the majority shareholders. (*Id.* ¶ 4). The majority of revenue earned by Ship Management is derived from sources outside of the United States. (*Id.* ¶ 5). Ship Management, through its Singapore office, acts as managing owner of the M/T Chembulk Wesport, and has responsibilities for hiring the crew. (*Id.* ¶ 6). The majority of the crew, including Wai, are hired pursuant to a collective bargaining agreement. (*Id.* ¶ 6).

According to the Kyaw Declaration, Rainbow Holding has no offices in Florida or in the United States. (*Id.* ¶ 8). Additionally, all officers and directors of Rainbow Holding, with only one exception,[1] are located in Singapore. (*Id.* ¶ 9). The shares of Rainbow Holding are owned by Strategic Shipping, Inc., a Liberian company, and all officers and directors of this company, save for one,[2] are located in Singapore. (*Id.* ¶ 9). The majority of shareholders of Strategic Shipping, Inc. are also located in Singapore. (*Id.* ¶ 9). The majority of the revenue earned by Rainbow Holdings is derived from outside the United States. (*Id.* ¶ 10).

With regard to Maritime Management, the Kyaw Declaration states that this company "acts as agents for various ship owning and operating companies, including as a cargo operator for the M/T *Chembulk*

*Westport* in the United States," but "does not charter the vessel and does not hire the crew, and acts as an agent only on behalf of its clients." (*Id.* ¶ 11) (emphasis in original).

In response to the Motion to Dismiss, Wai has filed a printout from "MT Maritime Management Group's" website in the United States (**D.E.30**). The website printout reads, in relevant part, as follows:

**MTM U.S.A.**

The chartering team at MTM U.S.A. acts as agents for various ship owning and operating companies. The main companies represented are Chembulk Trading, Inc. and Strategic Bulk Carriers Inc. The staff at MTM Carriers makes commercial and operational decisions for parcel tankers while in the Western Hemisphere as well as overall tonnage allocation, and handy size bulk carriers operated worldwide.

M.T. Maritime Management (USA) LLC
500 Post Road East
Westport, CT 06880
U.S.A.

\* \* \* \* \* \*

**MTM Singapore**

This consists of two Group companies, MT Maritime Pte. Ltd. and MTM Ship Management Pte. Ltd. The former represents the commercial interests of the MTM Group throughout Asia, in particular commercial and operational decisions for parcel tankers engaged in trades inter-Far East, Southeast Asia westbound, and Arabian Gulf east and west.

M.T. MARITIME PTE. LTD. SINGAPORE
78 Shenton Way, # 13–02
SINGAPORE 079120

\* \* \* \* \* \*

---

1. The Kyaw Declaration does not indicate where this person is located.

2. The Kyaw Declaration also does not indicate where this person is located.

MTM Ship Management provides the full range of ship management services to Group and third-party companies, specializing in chemical and parcel tankers.

M.T.M. SHIP MANAGEMENT PTE LTD.

78 Shenton Way, # 13–01

SINGAPORE 079120

(MT Maritime Management Group's Website Listing, D.E. 30, p. 1–2) (emphasis in original).

Wai is a member of a union known as the Seaman Employment Control Division, Department of the Marine Administration, Ministry of Transport, Union of Myanmar ("SECD"). The SECD has a collective bargaining agreement with employers. As is common with collective bargaining agreements, the SECD collective bargaining agreements are not signed by individual employees, but rather are executed by the employers and the SECD. The SECD has a collective bargaining agreement with Ship Management.

The collective bargaining agreement executed between the SECD and Ship Management on January 9, 1999, titled the "Collective Bargaining Agreement Made Between Seamen Employment Control Division, Yangon and M.T.M. Ship Manage-

ment Pte. Ltd, Singapore for Employment of Myanmar Seamen," (hereinafter referred to as "CBA"), provides in pertinent part:

It is mutually agreed between the Seaman Employment Control Division, Department of Marine Administration, Ministry of Transport, Union of Myanmar (hereinafter called S.E.C.D. and the *M.T.M. SHIP MANAGEMENT PTE. LTD* (hereinafter called the Company)) that the S.E.C.D. agrees to supply and the Company agrees to employ Myanmar Seamen who are registered with S.E.C.D. consisting of Masters, Officers and ratings for serving on board the vessels owned/managed or operated by the Company, in accordance with terms and conditions contained in this agreement.

(Motion to Dismiss, Exh. A) (emphasis in original). The CBA also contains the following forum selection clause:

The law for the time being in force in the *REPUBLIC OF SINGAPORE* shall apply to this agreement and the same shall be interpreted and applied in accordance with such laws and parties hereby agree to **submit [to] the jurisdiction of the Courts of** *SINGAPORE*.[3]

---

**3.** Defendants have submitted an Affidavit from Oon Thian Seng (D.E.13), in which Seng, a practicing member of the Singapore bar, provides the following opinions, based on Singapore law: (1) the forum selection clause in favor of Singapore would provide Singapore courts with jurisdiction over any disputes relating to the CBA because Singapore law provides that Singapore courts will have jurisdiction "where the Defendants have submitted to or agreed to submit to the jurisdiction of the Singapore Courts;" (2) Wai's claims are cognizable under Singapore law, and Wai would prevail under that country's law if he proved that the Defendants were negligent and that the Defendants' negligence caused his injuries; (3) Wai would be entitled to appoint counsel of his choice to represent him in the legal proceedings in Singapore; (4) Wai's claim would be heard by a judge of the High Court, since a trial by jury is not available; (5) Wai would be entitled to appeal an adverse decision to the Court of Appeal, but unless there are exceptional circumstances, such as when relevant new evidence has become available only after trial, previously available evidence will not be admitted on appeal and there will be no re-examination of witnesses by the Court of Appeal; (6) Wai would be entitled to conduct discovery of documents, and although direct witness evidence is to be presented by affidavit, Wai would be able to conduct cross-examination of witnesses at his trial; and (7) Wai would be permitted to present evidence by deposition.

(Motion to Dismiss, Exh. A, p. 1) (bold emphasis added; other emphasis in original). The CBA addresses the terms and working conditions of Myanmar Seamen's employment with Ship Management (members of the crew, duration of service, extension of service, re-employment, termination, compensation, working hours, overtime, public holidays, leave pay, discipline, rules of conduct, grievance procedures, repatriation, medical examinations and treatment, medical leave and sick pay, allowances, working apparel, safety equipment, and fees and charges). (Motion to Dismiss, Exh. A, p. 2–11). One Addendum to the CBA, "Annexture (B)," "covers compensation for **permanent injury or death** to Myanmar Seamen occurring during the course of contract." (Motion to Dismiss Exh. A., p. 12) (emphasis in original).

There exists a letter of employment or letter of engagement, dated February 11, 2003, between Ship Management and Wai (hereinafter referred to as the "Letter"). (*See* Motion to Dismiss, Exh. B). In the Letter, Wai was offered the position of assistant chief officer on the M/T Chembulk Wesport, subject to the condition that he read and agree to abide by all of the terms of the CBA. By signing the Letter, Wai affirmed that he had read the CBA and agreed to its terms and conditions. (*Id.*). The Letter was signed by Wai before he joined the vessel, and later signed by the Captain on behalf of Ship Management when Wai joined the vessel approximately a week later.

Prior to joining the M/T Chembulk Westport, Wai also signed a "Guarantee." In the "Guarantee," Wai stated that he was fully aware and understood the contents of the CBA. (Motion to Dismiss, Exh. C). The "Guarantee" was also executed by the Captain of the vessel.

Wai sues Defendants under 46 App. U.S.C. § 688 (the "Jones Act"), 46 U.S.C. § 10313 (the "Seaman's Wage Act"), and under the general maritime law of the United States. In Count I, for negligence under the Jones Act, Wai alleges that Defendants breached their duty to provide him with a reasonably safe place to work. (Complaint, ¶ 9). It is alleged that Defendants were aware of the dangerous conditions that caused Wai's accident and injuries, and did not correct them, despite a reasonable opportunity to do so; or, that the conditions existed for such a sufficient length of time that, in the exercise of reasonable care, Defendants should have learned of them and corrected them. (Complaint, ¶ 11). As a result of Defendants' negligence, Wai allegedly suffered severe and permanent or continuing physical injuries and mental anguish, lost wages, medical expenses, lost earning capacity, and lost past and future income. (Complaint, ¶ 12).

Counts II, III and IV are brought under the general maritime law of the United States. Count II is based on unseaworthiness. Here, Wai alleges that Defendants breached their duty to provide him, as a crew member on their vessel on May 9, 2003, a seaworthy vessel, and that he suffered injuries as a result. (Complaint, ¶¶ 13–15). In Count III, for failure to provide maintenance and cure, Wai seeks recovery for maintenance and cure in the form of prompt, proper and adequate medical treatment, transportation to and from health care providers, room and board, and unearned and/or sick wages, which encompass regular wages, overtime, vacation pay, leave pay and tips to the end of the contract or voyage. Wai alleges that he made demand on the Defendants for such maintenance and cure, and Defendants refused to make payment to him, which caused him additional damages. (Complaint, ¶¶ 16–20). Count IV, for failure to treat, is also based on Defendants' alleged failure to provide Wai with prompt, proper

and adequate medical care for the injuries caused by the accident on May 9, 2003. It is alleged here that Defendants' medical personnel negligently failed to provide Wai prompt, proper, adequate and complete medical care: (a) by not giving Wai medical care in a timely manner after his initial injury; (b) by sending Wai back to work on medication after his injury, thereby aggravating and making his condition worse; (c) by not providing competent, trained and unbiased ship board medical personnel; and/or (d) by negligently selecting incompetent, untrained and biased shoreside doctors to treat Wai. (Complaint, ¶¶ 21–23).

Count V is brought under the Seaman's Wage Act. Wai alleges that he was discharged from service for the Defendants on May 17, 2003 as a result of his injuries. Wai further alleges that he has made demand from Defendants for unpaid earned wages, and such request has been denied. Thus, it is alleged that Defendants have failed to pay Wai all of his earned wages, including reimbursement of any improper deductions previously taken from Wai's wages. Wai seeks payment of his earned wages and improper deductions, and two days' worth of wages for each day the payments were delayed.

Wai seeks compensatory damages, including but not limited to, medical care, food and lodging, as well as attorney's fees, prejudgment interest, costs and punitive damages. Wai also seeks seizure, arrest, condemnation and sale of the M/T Chembulk Westport to satisfy any judgment entered in his favor.

Since his accident, Wai has resided in Coral Gables, Florida. He is receiving medical treatment in the United States, and has applied for political asylum based

on his affiliation with anti-government political groups in Burma (*See* D.E. 33). His asylum application indicates that Wai believes that, upon his return to Burma, the government of Burma will certainly incarcerate him and he will be subjected to physical and mental torture as a result of his long-standing opposition to the government of Burma and the filing of this lawsuit against a company that has a contract with the government of Burma. Wai's application for asylum, dated September 12, 2003, is still pending with the United States Department of Homeland Security, Bureau of Citizenship and Immigration Services.

Defendants filed the Motion to Dismiss on August 11, 2003. On February 18, 2004, Defendants filed the Motion to Stay Discovery, indicating that on February 4, 2003, Wai propounded Interrogatories and a Request for Production on each of the Defendants, "which discovery is directed squarely at the merits of this case." (Motion to Stay Discovery, p. 1, ¶ 3). Defendants seek to delay compliance with their discovery obligations until the Motion to Dismiss has been ruled on.

## II. *Legal Discussion*

### A. *Legal Standards on the Motion to Dismiss, and Conversion of Maritime Management's 12(b)(6) Motion to Dismiss into a Motion for Summary Judgment*

 Defendants have brought the Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6).[4] The section of the Motion that seeks dismissal based on the forum selection clause (improper venue) and choice of law principles (*forum non conveniens*) is properly

---

4. Defendants also seek dismissal under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Wai's claims arise under the Jones Act, the Seaman's Wage Act, and the

general maritime law of the United States. Because federal admiralty and maritime jurisdiction exists under 28 U.S.C. §§ 1331, 1333, Defendants' 12(b)(1) argument is unavailing.

brought pursuant to Fed.R.Civ.P. 12(b)(3) as a motion to dismiss for improper venue. *See Webster v. Royal Caribbean Cruises, Ltd.,* 124 F.Supp.2d 1317, 1320 (S.D.Fla. 2000) (citing *Lipcon v. Underwriters at Lloyd's London,* 148 F.3d 1285, 1290 (11th Cir.1998)). On such a Rule 12(b)(3) motion, the court may consider matters outside the pleadings such as affidavit testimony, "particularly when the motion is predicated upon key issues of fact." *Id.* (citation omitted). This Court has explained the court's inquiry on Rule 12 motions to dismiss as follows:

> [W]hen a party moves for dismissal for failure to state a claim under Rule 12(b)(6), the rule specifically provides that if the court considers matters outside the pleadings, the court is required to convert the motion to one for summary judgment under Rule 56 and serve notice upon the parties so that they may present all materials made pertinent to such a motion. For defenses raised under subsections (1) through (5), however, the court may consider matters outside the pleadings, and often must do so, since without aid of such outside materials the court would be unable to discern the actual basis, in fact, of a party's challenge to the bare allegation in the complaint that venue is proper in this court.

*Id.* (citation omitted). When the court converts a Rule 12(b)(6) motion to dismiss into a motion for summary judgment, "[t]he district court is required to notify the parties that the motion has been converted, and give the parties 10 days in which to supplement the record." *Trustmark Ins. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1267 (11th Cir.2002) (citing *Herron v. Beck,* 693 F.2d 125, 126 (11th Cir.1982)); *see* Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relied can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

 On a motion to dismiss based on improper venue, the plaintiff has the burden of showing that venue in the forum is proper. *See, e.g., Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.,* 262 F.Supp.2d 898, 913 (N.D.Ill. 2003); *Indymac Mortgage Holdings, Inc. v. Reyad,* 167 F.Supp.2d 222, 237 (D.Conn. 2001) (citing *U.S. Envtl. Prot. Agency v. Port Auth. of New York & New Jersey,* 162 F.Supp.2d 173, 183 (S.D.N.Y.2001)); *McCracken v. Automobile Club of Southern California, Inc.,* 891 F.Supp. 559, 560 (D.Kan.1995). The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper. *See, e.g., Indymac,* 167 F.Supp.2d at 237 (citations omitted); *Vanguard,* 262 F.Supp.2d at 913; *McCracken,* 891 F.Supp. at 561; *see also Hodgdon Powder Co., Inc. v. Clean Shot Technologies, Inc.,* 92 F.Supp.2d 1170, 1171–72 (D.Kan.2000) (noting that the standard for deciding a motion to dismiss for improper venue is generally the same as that for deciding a motion to dismiss for lack of personal jurisdiction). The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *See id.; see also Murphy v. Schneider National, Inc.,* 349 F.3d 1224, 1229–30 (9th Cir.2003). Applying these standards to the 12(b)(3) Motion to Dismiss in the present case, the Court has considered the testimonial and documentary evidence submitted by the parties in connection with the Motion to Dismiss, all of which is relevant to the fact-intensive venue issues to be determined.

The section of the Motion to Dismiss that requests dismissal of the claims against Maritime Management for failure to state a cause of action, arguing that this Defendant's connections with Wai and with the vessel are insufficient to establish liability under maritime law, is considered a Rule 12(b)(6) motion to dismiss. The U.S. corporate Defendant contends that Wai has failed to state a cause of action against it under the Jones Act, general maritime law, or under the doctrine of seaworthiness, because it is not, and was not, the owner, operator, or charterer of the M/T Chembulk Westport, nor has it ever employed Wai. In support of this argument, Defendants have submitted a declaration from a person, Maung Win Kyaw, attesting to have knowledge of Maritime Management's business and its relationship to the other Defendants and to the M/T Chembulk Westport (D.E.21). Wai has submitted relevant documentary evidence on these issues, *i.e.*, a copy of Maritime Management's website listing in the United States (D.E.30). It is necessary for the Court to consider these matters outside of the pleadings to resolve the Rule 12(b)(6) Motion to Dismiss. Therefore, this portion of the Motion to Dismiss, and only this portion, is converted into a motion for summary judgment.[5]

**B. *The Forum Selection Clause is Merely Permissive, Does Not Require the Parties to Litigate in Singapore, and Does not Make Florida an Improper Venue***

 It is well settled that forum selection clauses " 'are presumptively valid where the underlying transaction is fundamentally international in character.' " *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1295 (11th Cir.1998) (quoting *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir.1993) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)) (internal quotation omitted). " 'This presumption of validity may be overcome, however, by a clear showing that the clauses are unreasonable under the circumstances,' " *Lipcon*, 148 F.3d at 1295 (quoting *Roby*, 996 F.2d at 1363) (quoting *Bremen*, 407 U.S. at 10, 92 S.Ct. 1907) (internal quotation omitted)). Forum selection clauses will be found "unreasonable under the circumstances," *Bremen*, 407 U.S. at 10, 92 S.Ct. 1907, and thus unenforceable only when: (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy (hereinafter *"Bremen* factors"). *Lipcon*, 148 F.3d at 1295–96 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594–95, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Bremen*, 407 U.S. at 15–18, 92 S.Ct. 1907; *Roby*, 996 F.2d at 1363).

 The parties do not invoke any of the *Bremen* factors in their arguments on enforceability of the forum selection clause. The general validity of the forum

---

5. Because this case is still in its infancy, and because Wai has argued that it requires additional discovery to develop the issues in this case, the Court directs Wai to Fed.R.Civ.P. 56(f), which provides:

 Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

selection clause contained in the CBA is therefore not in dispute. Wai does not argue that the clause is the result of fraud, overreaching or undue influence, that Singapore's law is fundamentally unfair or that Singapore is an inconvenient forum, or that the clause contravenes a strong public policy of Florida, or of the United States. Rather, the dispute concerns (1) whether the forum selection clause contained in the CBA covers Wai's personal injury claims in this lawsuit; and (2) whether the language of the forum selection clause actually "excludes" jurisdiction in a forum other than Singapore such that dismissal would be appropriate. With respect to the latter,[6] Wai relies on the important distinction between a permissive, or "consent-to-jurisdiction" clause, and a mandatory clause. *See Florida Polk County v. Prison Health Servs., Inc.,* 170 F.3d 1081, 1084 n. 8 (11th Cir.1999) (noting that since *Bremen,* the Eleventh Circuit Court of Appeals has "analyzed these clauses [forum selection clauses] under a 'mandatory/permissive' test, enforcing only those clauses that unambiguously designate the forum in which the parties must enforce their rights under the contract"). Wai argues that, in this case, the forum selection clause in the CBA is permissive rather than mandatory.

■ An action is only subject to dismissal based on a forum selection clause if the import of the language of the clause as a whole is to provide a particular court or courts with "exclusive jurisdiction," although the clause need not include the word "exclusive." In *Citro Florida, Inc. v. Citrovale, S.A.,* 760 F.2d 1231 (11th Cir.

1985), the Eleventh Circuit considered a forum selection clause providing that "[p]lace of jurisdiction is Sao Paulo/Brazil." The district court had determined that this clause was mandatory, and dismissed the action based on the forum selection clause. The Eleventh Circuit reversed, stating that "[a]lthough the forum selection clause was properly determined by the district court to be an enforceable agreement, the clause does not clearly specify that Sao Paulo is the *only* place of jurisdiction." *Id.* at 1231–32 (emphasis in original).

Like the Defendants here, the party seeking dismissal in the *Citro Florida* case relied primarily on *Bremen* in arguing that the clause should be enforced and the case dismissed in favor of Brazil. The court addressed this argument by stating that the clause in *Bremen* was much more specific, in that it provided that any dispute "must be treated before the London Court of Justice," and was accordingly not subject to more than one interpretation. *Id.* at 1232 (citing *Bremen,* 407 U.S. at 1–2, 92 S.Ct. 1907). Moreover, "[t]he Bremen court did not reach the distinctions between mere 'consent to jurisdiction' clauses and 'mandatory' clauses." *Id.; see also Creative Tile Marketing, Inc. v. SICIS International,* 922 F.Supp. 1534, 1538 (S.D.Fla. 1996) (retaining jurisdiction, and noting that, unlike the mandatory forum selection clause in the *Bremen* case, the following clause in question was permissive: "all disputes arising from or connected with this Agreement ... shall fall within the jurisdiction of the competent judge of *47023 Ronta Cesena, Italy* ") (emphasis in

---

**6.** Whether or not the forum selection clause in the CBA governs Wai's personal injury claims is not considered because, even if the clause governed such disputes, it is not broad enough to exclude litigation in the United States. *See supra.* However, the Court notes, without rendering a ruling on this issue, that it appears that resolution of Wai's personal injury claims would require interpretation of the Addendum ("Annexture B") to the CBA that specifically addresses "personal injuries" suffered by Myanmar seamen during the course of their employment under the CBA, and therefore, the forum selection clause applies to the claims.

original) (citing *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127–28 (5th Cir. 1994); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77–78 (9th Cir.1987)). The court then applied the mandatory/permissive test to the clause before it and determined that "[t]he forum selection clause in this case is ambiguous concerning the exclusive nature of the provision." *Id.*, The court further stated:

> Under the rule established by the Fifth Circuit in *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir.1974) and *Zapata Marine Service v. O/Y Finnlines, Ltd.*, 571 F.2d 208 (5th Cir.1978), 'when a contract provision is subject to opposing, yet reasonable interpretations, an interpretation is preferred which operates more strongly against the party from whom the words proceeded.' 571 F.2d at 209.

*Id.* (emphasis in original).

In *Snapper, Inc. v. Redan*, 171 F.3d 1249 (11th Cir.1999), the Eleventh Circuit once again considered the distinction between mandatory and permissive forum selection clauses. The clause at issue in that case provided:

> The Undersigned agrees that any legal action or proceeding with respect to this instrument may be brought in the courts of the State of Georgia or the United States District Court, Northern District of Georgia, Atlanta Division, all as Creditor may elect. By execution of this instrument, the Undersigned hereby **submits to each such jurisdiction**, hereby expressly waiving whatever rights may correspond to it by reason of its present or future domicile. Nothing herein shall affect the right of Creditor to commence legal proceedings or otherwise proceed against the Undersigned in any other jurisdiction or to serve process in any manner permitted or required by law.

*Id.* at 1260 (emphasis added). The Court found that the clause was permissive in that it granted the Creditor the absolute right to choose the forum for litigation among the stated Georgia state or federal courts or any other courts of competent jurisdiction, but the clause was mandatory as to the Guarantors because it required an absolute submission by them to the jurisdiction of whichever fora the Creditor chose. *Id.* at 1260, 1262 n. 64. Thus, the Guarantors had waived their right to remove.

The central issue in the *Snapper* case was the Guarantors' waiver of removal, but the Court addressed the Guarantors' arguments regarding mandatory and permissive clauses as follows:

> The Guarantors also argue that the federal courts distinguish between 'mandatory' and 'permissive' forum selection clauses. *See, e.g., Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1232 (11th Cir.1985) (distinguishing "between mere 'consent to jurisdiction' clauses and 'mandatory clauses' "); *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (2d Cir.1993). **They correctly note that these cases require quite specific language before concluding that a forum selection clause is mandatory, such that it dictates an exclusive forum for litigation under the contract. They also correctly note that these decisions refuse to dismiss a suit or transfer an action to the stated forum when the clause is deemed permissive.** They err, however, in concluding that these decisions hold that permissive clauses are unenforceable in the sense that the clauses are effectively read out of the contract.
>
> In seizing on the mandatory/permissive distinction, the Guarantors ignore the context in which this distinction was relevant. **In all of the cases cited by the Guarantors, the party seeking en-**

forcement of the clause was seeking dismissal of the suit when the plaintiff had chosen to bring suit in a forum not stated in the clause. ... We specifically concluded [in *Citro Florida*] that the clause was enforceable, but that it did not compel jurisdiction in Brazil. The clause merely permitted either party to bring suit in Brazil without allowing the opposing party to object; it did not go further and preclude suit in any other forum.... Likewise, in *Caldas & Sons*, the provision at issue provided that '[t]he laws and courts of Zurich are applicable.' *Caldas & Sons*, 17 F.3d at 127 (internal quotation marks omitted). The defendants sought to have the suit dismissed, claiming that this provision required the parties to conduct all litigation in Zurich. The Fifth Circuit rejected this argument, holding that the provision permitted, but did not require, litigation in Zurich. *See id.* at 127–28.

*Id.* at 1262 n. 24 (italics in original; bold emphasis added).

The law requires that the parties do more than just consent to jurisdiction in a particular forum without waiving jurisdiction in other forums. In this case, the forum selection clause is just such a "consent to jurisdiction" clause. The SECD and Ship Management agreed to "submit [to] the jurisdiction of the Courts of Singapore." There is no exclusive language in the clause precluding the parties from bringing covered claims in other courts. The clause is ambiguous in this regard, and thus is subject to the reasonable interpretation that the parties merely agreed that any objections to jurisdiction in Singapore by either of them would be barred if a covered claim were brought in the Singapore courts. Jurisdiction elsewhere was not waived.

Furthermore, the forum selection clause is interpreted more strongly against Ship Management as one of the parties to the clause. Wai agreed to the clause's terms after the fact, but it was the SECD and Ship Management that were responsible for putting the clause in final form. *See, e.g., Amermed Corp. v. Disetronic Holding AG.*, 6 F.Supp.2d 1371, 1375 (N.D.Ga.1998) (finding forum selection clause permissive where it did not contain exclusive language and it "was put in final form by" party moving for dismissal). Based on the foregoing Eleventh Circuit precedent, and in reliance upon the extensive line of cases holding that forum selection clauses containing the same or very similar language ("submitting to" jurisdiction) are permissive, and not exclusive or mandatory,[7] the

---

7. *See, e.g., Redondo Constr. Corp. v. Banco Exterior de Espana, S.A.*, 11 F.3d 3, 5–6 (1st Cir.1993) (clause providing that "borrower and guarantors each hereby expressly **submits to** the jurisdiction of all federal and state courts located in the state of Florida," held permissive) (emphasis added); *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 957 (5th Cir.1974) (finding that provision reading "[t]his agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York" was permissive since one reasonable construction of the provision was that plaintiff merely intended to **submit to** the jurisdiction of the New York courts if sued there but did not intend to waive his right to sue or be sued elsewhere, and since the contract agreement, having been put into written form by defendant, had to be construed more strongly against it) (emphasis added); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 58 (S.D.N.Y.2001) (forum selection clause providing that the parties "will **submit to** the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court [sic] jurisdiction" was permissive) (emphasis added); *Raspino v. JRL Enterprises, Inc.*, 2001 WL 845455, * 2 (E.D.La.2001) (finding that provision that stated "the parties hereby agree to **submit to** the jurisdiction of the courts of the State of New York," was permissive forum selection clause) (emphasis added); *S & D Coffee, Inc. v. GEI Autowrappers*, 995 F.Supp. 607, 609–10 (M.D.N.C.1997)

undersigned finds the clause here to be permissive. Accordingly, the relief requested by Defendants, dismissal for improper venue based on the forum selection clause in the CBA, is not appropriate.

## C. The Insufficient Record Does Not Permit Dismissal Based on a Choice of Law Analysis

■ Defendants urge that the Court dismiss this action based on *forum non conveniens*, arguing that choice of law provisions weigh against United States jurisdiction in this case. In a recent decision, the choice of law analysis that the Eleventh Circuit applies in determining whether to dismiss a Jones Act claim based on *forum non conveniens* was explained:

> Under Eleventh Circuit case law, the application of the Jones Act involves a question of choice of law, the determination of which requires a two-pronged inquiry. *Szumlicz v. Norwegian America Line, Inc.,* 698 F.2d 1192, 1195 (11th

Cir.1983). First, the district court must decide, under choice of law principles, whether the law of the United States should be applied. If United States law applies, the case should not be dismissed for *forum non conveniens. Id.* If the court determines that United States law does not apply, it shall then examine the traditional considerations of *forum non conveniens* to determine whether the court should exercise its discretion and decline to assert jurisdiction over the case. *Id.*

Before conducting the forum non conveniens analysis as suggested by Defendants, this Court is obligated to determine whether the Jones Act is applicable under the facts of the case. *Szumlicz v. Norwegian America Line, Inc.,* 698 F.2d 1192, 1195 (11th Cir. 1983). The Jones Act provides the following:

> Any seaman who shall suffer personal injury in the course of his employment

---

(finding the following forum selection clause to be permissive: "[t]he contract between the company [defendant] and the customer [plaintiff] shall be governed by and construed in accordance with English law, and both parties shall **submit to** the jurisdiction of the English courts" because "it directs only that English courts have jurisdiction, not that English courts shall 'have exclusive jurisdiction' or that 'venue shall lie in England;'" also noting that permissive forum selection clauses are more appropriately referred to as "consent to jurisdiction" clauses, as they "merely specif[y] a court empowered to hear the litigation, in effect waiving any objection to personal jurisdiction in a venue," whereas a mandatory forum selection clause identifies "a particular state or court as having exclusive jurisdiction over disputes arising out of the parties' contract and their contractual relationship.") (emphasis added); *Pep Boys, Manny, Moe & Jack v. American Waste Oil Services Corp.,* 1997 WL 367048, *7 (E.D.Pa. 1997) (finding the following clause permissive: "AWR hereby **submits to** personal jurisdiction in said state for enforcement of this Agreement and waives any and all personal

rights under the laws of said state to object to jurisdiction within said state for the purposes of litigation to enforce this Agreement.") (emphasis added); *Cummings v. Caribe Marketing & Sales Co.,* 959 F.Supp. 560, 563–65 (D.P.R. 1997) (finding the following clause permissive: "[t]he undersigned each agrees to **submit to** personal jurisdiction in the state of New York in any action or proceeding arising out of or relating to this guaranty") (emphasis added); *Guy F. Atkinson Constr., A Div. of Guy F. Atkinson Co. v. Ohio Mun. Elec. Generation Agency Joint Venture 5,* 943 F.Supp. 626, 628–29 (S.D.W.Va.1996) (clause providing "the owner and the contractor jointly and severally **submit to** the personal jurisdiction of the state and federal courts of Franklin County, Ohio," held permissive) (emphasis added); *S.K. & Co., Inc. v. The Legacy Group of America, Inc.,* 1996 WL 5072, *1 (S.D.N.Y. 1996) (finding the following forum selection clause permissive: "[Plaintiffs] hereby agree[ ] to submit to the jurisdiction of the Courts of the State of New York for purposes of enforcing this agreement.") (emphasis added).

may, at his election, maintain an action for damages at law, with the right of trial by jury ... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. 46 U.S.C. app. § 688(a).

*Williams v. Cruise Ships Catering*, 299 F.Supp.2d 1273, 1277 (S.D.Fla.2003) (emphasis in original). The *Williams* court then discussed and applied the test established by the Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 583–91, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). According to *Lauritzen*, courts must consider the following seven factors in determining whether the Jones Act is applicable to a claim: (1) the place of the wrongful act; (2) the law of the ship's flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the shipowner; (5) the place where the shipping articles were signed (or, the place of the contract); (6) the accessibility of the foreign forum; and (7) the law of the forum. *Id.* The *Lauritzen* factors are neither exhaustive nor meant to be applied mechanically to the facts of each case. *See Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–09, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). In *Rhoditis*, the Supreme Court added an eighth factor to the list, the "shipowner's base of operations." *Id.* at 309, 90 S.Ct. 1731. The Court noted that the operational contacts of both the ship and its owner are to be considered in the choice of law analysis. *Id.* at 310, 90 S.Ct. 1731.

Defendants argue that Wai has not offered a "shred of evidence" as proof of Wai's mere allegations that the Defendants are actually American companies, or have American ownership interests, and are attempting to escape American law by nominal foreign registration. According to Defendants, "Plaintiff has made no attempt to rebut, or even respond to the affidavits filed in this case, nor to present to this Court any facts whatsoever other than their [sic] bare unsupported allegations," and "[t]his is simply insufficient to overcome the evidence and law submitted by Defendants in support of their Motion to Dismiss." (Reply in Support of Motion to Dismiss, p. 8). Wai argues that an analysis under *Lauritzen* and *Rhoditis* would be "premature prior to the opportunity to conduct more extensive discovery in the case at bar," especially with respect to the eighth factor. (Response, p. 13). Specifically, Wai maintains that additional discovery must be had to ensure that the Defendants are not American shipowners trying to escape the obligations American law places on them. *See Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1517 (11th Cir. 1985). Wai's position is that at this point he cannot offer any evidence on several of the factors, and that any analysis under *Lauritzen* and *Rhoditis* must be deferred until such time as he has had the opportunity to engage in further discovery.

Only three of the *Lauritzen/Rhoditis* factors are not in dispute, *i.e.*, the place of the wrongful act (Port Everglades, Florida); the place of the contract (Singapore); and the law of the forum (United States). Every other factor is disputed. With respect to the second factor, the law of the ship's flag, Wai argues that the Liberian flag is a mere "flag of convenience." As to the third factor, "allegiance or domicile of the injured seaman," Wai contends that this is "unknown" because he is presently seeking political asylum in the United States and receiving medical treatment here. The parties also dispute the fourth and eight factors, the "allegiance of the shipowner" and the "base of operations." Defendants argue that these factors point to Singapore, but Wai alleges (although there is nothing yet in the record to prove it) that Defendants are actually an American company attempting to escape American law by nominal foreign registration.

Finally, the parties dispute whether or not Singapore is truly accessible as an alternative forum, the sixth factor.

That several of the *Lauritzen/Rhoditis* factors are disputed would not alone be reason enough for this Court to decline to engage in the choice of law analysis if the record were developed. However, the analysis required by *Lauritzen* and *Rhoditis* would certainly be premature here. The Complaint in this action was filed on June 19, 2003, and the case has only recently been set for trial. The February 2, 2004 Scheduling Order (**D.E.40**) sets a **September 16, 2004** deadline for completion of all discovery. Therefore, Wai's argument that the discovery he has obtained thus far is insufficient is persuasive. Although the evidence proffered by the Defendants tends to show that Defendants have minimal contacts with the United States, the evidence also shows that Defendants do have some contacts with this forum. The issues of fact with respect to the relationship between the Defendants and the ship, and with respect to their (the Defendants' and the ship's) contact with the United States, prevent the Court from properly coming to a conclusion as to which law applies to Wai's claims.

At least one of the Defendants, Maritime Management, and the ship has contacts with the United States. Wai has also represented to the Court at oral argument that Maritime Management may also be affiliated with another unknown entity that has the same ownership interest, and that Wai should be able to conduct further discovery to identify this other company and determine its relationship to this dispute.[8] Under the circumstances, Wai will be permitted to conduct further discovery to permit him to rebut the evidence put forward by the Defendants. At this early stage in the proceedings, Wai will not be prevented from having American law apply to his claims. Other courts have reached the same result for similar reasons. *See, e.g., Equal Employment Opportunity Commission ("EEOC") v. Kloster Cruise Limited,* 939 F.2d 920, 923–24 (11th Cir.1991) (reversing the district court's denial of the EEOC's application for enforcement of an administrative subpoena, finding that district had prematurely resolved jurisdictional issue, and ordering that employer operating foreign flagged vessel owned by foreign corporation had to comply with subpoena in order to allow the EEOC to investigate facts relating to the *Lauritzen/Rhoditis* analysis); *Blanco v. Carigulf Lines,* 632 F.2d 656, 658 (5th Cir.1980) (finding that "dismissal by the district court was premature in that it did not review all of the necessary factors upon which a resolution of the presence or absence of proper jurisdiction must be based"); *Gazis v. John S. Latsis (USA), Inc.,* 729 F.Supp. 979, 985 (S.D.N.Y.1990) (denying motions to dismiss, stating that "[s]ince plaintiff has not yet had the opportunity to take any discovery, the resolution of this issue [application of the Jones Act under *Lauritzen/Rhoditis* ] must wait development of a sufficient record."); *Cerda v. Eletson Maritime Corp.,* 515 F.Supp. 883, 887 (E.D.Pa.1981) (denying defendant's motion to dismiss, finding that injured seaman plaintiff was entitled to additional discovery to determine which country's law would apply to his action; and noting "a record that fails to disclose facts that might constitute substantial contacts between the transaction and the United States cannot be dispositive of the choice of law question even if it manifests a definite tendency in either direction."). Accordingly, the Motion to Dis-

---

8. This is consistent with Wai's allegation in the Complaint that the Defendants were "Wai's employer and/or acted as an agent for an undisclosed principal who was the owner and/or operator of said ship." (Complaint, ¶ 5).

miss based on *forum non conveniens* is denied.

### D. *Defendants' Claims of Improper Process and Service of Process Have Been Rendered Moot*

██ Defendants have waived improper process and improper service of process by accepting service. Nevertheless, Defendants' Motion states:

> While service of process and process were defective, Defendants recognize that each summons and Complaint have made it to the proper parties. **Defendants are willing to waive re-service and to accept service of process** *de facto* in this case, since their attorney has received the papers, **but in case of future matters ask the Court to specifically hold that service was technically improper,** that neither Mr. Fichtel nor Lamorte, [sic] Burns is an agent for service of process, and that service was made with[out] explicit and express waiver of the Defendants.

(Motion to Dismiss, p. 16) (emphasis added). In their Reply brief, Defendants reiterate that what they seek is "a ruling from the Court that the method of service on the *in personam* Defendants was invalid," but "do not seek outright dismissal on this basis as they are willing to accept service of process *de facto.*" (Reply, p. 9–10).

The issues of improper process and service of process have been rendered moot by Defendants' waiver and acceptance. Therefore, the Court declines Defendants' invitation to provide them with what in essence would be an advisory opinion on issues that are no longer in this case.

### III. *Conclusion*

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Seaman's Complaint for Damages **(D.E.15)** is **DENIED,** and the case will not be dismissed based on improper venue or *forum non conveniens;* however, the parties are advised that Defendant, M.T. Maritime Management (USA) LLC's Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) has been converted into a motion for summary judgment under Rule 56, Fed. R. Civ. P.. Accordingly, Wai shall have ten **(10) days** from the date of this Order to file a memorandum in response to the Motion for Summary Judgment, a statement of material facts and any other accompanying affidavits, exhibits, or other filings required by Fed.R.Civ.P. 56 and S.D. Fla. L.R. 7.5; and Defendants shall have **ten (10) days** from service of Wai's filing to respond. The Court will enter a ruling on the Motion for Summary Judgment after the parties have had an opportunity to supplement the record.

2. Defendants' Motion to Stay Discovery Pending Ruling on Motions to Dismiss **(D.E.41)** is **DENIED.** Defendants shall respond to the outstanding discovery requests within the time required by the Rules.